UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME CAMERON, individually, and as next friend of A.C., a minor, ) ) ) Plaintiff, ) ) v. ) ) ) CITY OF CHICAGO, and OFFICERS ) NICHOLAS WEDSTER, D. QUINN, ) MEGAN AGUINAGA, and J. KUKSUK, ) ) Defendants. ) | No. 16 C 08347<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jerome Cameron, for himself and on behalf of his daughter, A.C., filed this suit against the City of Chicago and four Chicago police officers. Cameron alleges that, back in April 2015, the officers pulled him over without probable cause, then arrested and prosecuted him based on evidence they had falsified and planted. R. 38, First Am. Compl.[1] He brings federal-law claims under 42 U.S.C. § 1983 for equal protection, due process, civil conspiracy, malicious prosecution, unlawful search and seizure, and false arrest, as well as under Illinois law for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy.[2] *Id.*

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Cameron's federal law claims, and supplemental jurisdiction under 28 U.S.C. § 1367 for his state-law claims. Citations to the record are noted as "R." followed by the docket number and, where necessary, the page or paragraph number.

[2]The First Amended Complaint asserts the claims as follows: Count 1 (Equal Protection Class of One), First Am. Compl. ¶¶ 64-68; Count 2 (Due Process), *id.* ¶¶ 69-76; Count 3 (42 U.S.C. § 1983 Civil Conspiracy), *id.* ¶¶ 77-82; Count 4 (Fourth Amendment Malicious Prosecution), *id.* ¶¶ 83-91; Count 5 (Unlawful Search), *id.* ¶¶ 92-100; Count 6 (Unlawful Seizure), *id.* ¶¶ 101-106; Count 7 (Unlawful Seizure as to Plaintiff A.C.), *id.*

Defendants now move to dismiss two of the counts—the equal protection class-of-one claim (Count 1) and the Illinois civil conspiracy claim (Count 11)—for failure to state a claim. R. 20, Def. Officers' Mot. to Dismiss; R. 46, Aguinaga's Mot. to Dismiss.[3] One of the officers, Aguinaga, also moved to dismiss the state-law claims against her on statute of limitations grounds. Aguinaga's Mot. to Dismiss at 5-8. For the reasons discussed below, the motions to dismiss are denied, except that the state-law claims against Aguinaga are dismissed as barred by the statute of limitations.

**I. Background**

In evaluating the motions to dismiss, the Court accepts as true the amended complaint's factual allegations and draws reasonable inferences in Cameron's favor. *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2079 (2011). There is a prequel to the events in April 2015, when Cameron and his daughter were stopped. On March 31, 2013, Officer Wedster stopped someone in an area known for narcotics trafficking and seized what Wedster thought was crack cocaine and black tar heroin (the substances were supposedly stored in a large ziplock bag and various tinfoil

---

¶¶ 107-112; Count 8 (False Arrest), *id.* ¶¶ 113-118; Count 9 (*Monell* claim against Chicago), *id.* ¶¶ 119-124; Count 10 (malicious prosecution under Illinois law), *id.* ¶¶ 125-130; Count 11 (conspiracy to commit malicious prosecution under state law), *id.* ¶¶ 131-139; Count 12 (intentional infliction of emotional distress), *id.* ¶¶ 140-146; Count 12 (intentional infliction of emotional distress as to Plaintiff A.C.), *id.* ¶¶ 147-154. Plaintiffs also allege an indemnity claim, as well as a respondeat superior claim (as to the state-law claims), against the City of Chicago, *id.* ¶¶ 155-164.

[3]Defendants also moved to dismiss Count 4, the malicious prosecution claim under the Fourth Amendment. Def. Officers' Mot. to Dismiss at 7. But after the Supreme Court decided *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 919 (2017) (allowing a Fourth Amendment claim for post-legal-process detention), the parties conferred and Defendants agreed to withdraw their motion to dismiss, on the understanding that Plaintiffs limited this claim to the unlawful detention between Cameron's probable-cause hearing and his release from Cook County Jail. R. 62, Joint Status Report ¶¶ 5, 8.

packages). First Am. Compl. ¶¶ 25-26, 35. The suspect got away, but Wedster claimed that the suspect held Plaintiff Jerome Cameron's identification. *Id.* ¶¶ 25, 27. Wedster issued an "investigative alert" for Cameron following this incident. *Id.* ¶¶ 17, 25. A Chicago Police Department (CPD) investigative alert is a notice that goes out to other police officers in the department, and purportedly allows a suspect to be taken into custody without an arrest warrant. *Id.* ¶¶ 120, 122-23. Cameron alleges that he was not the person that Wedster stopped that March day. *Id.* ¶¶ 30-32. Also, it turns out that, according to forensic lab tests completed about a week later on April 9, 2013, the substances in the ziplock bag and tinfoil packages were not controlled substances. *Id.* ¶ 35. Officer Aguinaga received this lab report the same day that it was issued, but did not withdraw the investigative alert for Cameron. *Id.* ¶¶ 36-37, 49.[4]

Over two years later, on April 23, 2015, Cameron was driving with his daughter A.C. in the backseat when he was pulled over by Defendants Quinn and Kuksuk for having a broken rear central tail-light. First Am. Compl. ¶¶ 8, 13. But Illinois law only requires two lighted tail lamps—the right and left rear—so there actually was no probable cause to make the stop. *Id.* ¶ 14; 625 ILCS 5/12-201(b). Quinn and Kuksuk ran Cameron's information through a CPD database and

---

[4]Cameron added Officer Aguinaga as a defendant in the amended complaint, filed on February 28, 2017. *See* First Am. Compl.. In addition to joining the original motion to dismiss, Officer Aguinaga moved to dismiss the state law claims—Counts 10, 11, and 12—against her as barred by Illinois' one-year statute of limitations for suits against government officers. Aguinaga's Mot. to Dismiss at 2. In his response brief, Cameron agreed that the state claims against Aguinaga are time-barred, as the latest possible date the claims accrued was October 14, 2015 (when the criminal charges against him were dropped). R. 56, Pl.'s Resp. Br. to Aguinaga's Mot. at 3; Aguinaga's Mot. to Dismiss at 6. So Aguinaga is dismissed as a defendant for those three state-law counts.

3

discovered the investigative alert in the system. First Am. Compl. ¶ 17. They also discovered that Cameron had an Illinois license to carry a concealed firearm. *Id.* ¶¶ 10, 19. The officers then searched Cameron's car and arrested him. *Id.* ¶ 20. While Cameron was in custody in the police car, he watched Officers Quinn and Kuksuk find his gun—which Cameron says was cased and unloaded—in his car. *Id.* ¶¶ 57, 59. According to Cameron, Quinn and Kuksuk then removed the gun from the case and loaded it. *Id.* ¶ 60.

Officers Quinn and Kuksuk next took Cameron and A.C. to the police station, where they held A.C. until her mother came to pick her up. First Am. Compl. ¶ 23. Cameron alleges that when Officer Wedster saw Cameron at the police station, Wedster knew that Cameron was not the man that Wedster had stopped back in 2013. *Id.* ¶¶ 33-34. But Wedster nevertheless signed a sworn complaint charging Cameron with possession of a controlled substance, and changed the date of the previous incident (from which the investigative alert stemmed) from March 31, 2013 to March 31, 2015. *Id.* ¶¶ 42, 44. Officer Quinn also signed a sworn complaint against Cameron for endangering the health of a child by allegedly keeping a gun armed and within reaching distance of the minor A.C. *Id.* ¶ 53. Several months later, in October 2015, the state prosecutor dismissed all charges against Cameron. *Id.* ¶ 62. Cameron then filed this lawsuit, alleging violations of his and A.C.'s constitutional rights, as well as asserting several state-law claims. *See* R. 1, Compl.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, as opposed to mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

### A. Count 1: Equal Protection "Class of One"

In Count 1, Cameron alleges that the officers denied him the equal protection of the law by targeting him and filing false complaints and reports about him. First Am. Compl. ¶ 65. The officers argue that Cameron has failed to plausibly allege that he was targeted and discriminated against because he has not identified a group of similarly situated individuals that were treated better than him by the defendants. Def. Officers' Mot. to Dismiss at 6.

Cameron essentially concedes that he did not name a similarly situated individual or group, *see* R. 28, Pl.'s Resp. Br. at 4 ("Plaintiff need not identify a similarly situated individual."), but he argues that he does not need to, because animus is readily obvious from the complaint, *id*.[5] Cameron is correct: no controlling case stands for the proposition that every class-of-one claim must identify, in order to survive a dismissal motion, a similarly situated individual or group that was treated differently from the plaintiff. It would be an understatement to say that the precise boundaries of a class-of-one claim are not yet mapped by case law. Indeed, in *Del Marcelle v. Brown County Corporation*, 680 F.3d 887 (7th Cir. 2012) (en banc), the Seventh Circuit split 4-1-5 when trying to set forth the elements of the claim (more on this below). But the Seventh Circuit has approved the viability of a class-of-one claim without regard to identifying a similarly situated individual or group. *See, e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). In *Geinosky*,

---

[5]Cameron filed a response brief, R. 28, to the officers' dismissal motion, as well as a separate response brief, R. 56, to Aguinaga's later-filed dismissal motion. For convenience's sake, the first response brief will be referred to as "Pl.'s Resp. Br."

6

the plaintiff had been subjected to 24 bogus parking tickets, all written by officers in a specific Chicago police unit. The Seventh Circuit reversed the dismissal of his class-of-one claim, holding that there was no need for the plaintiff to specify, especially in the complaint, a particular person or group that had not received bogus tickets like him. *Id.* at 748. It would be one thing if someone merely received a couple of invalid parking tickets—in that context, no plausible equal protection claim could be stated, in light of the discretion wielded by officers. *Id.* at 749. But context is crucial, so if factual allegations add up to "deliberate and unjustified official harassment," *id.* at 745, even taking into account wide police discretion, then a valid class-of-one claim is stated. It is true that some claims—like class-of-one claims—require plaintiffs to meet a difficult substantive standard, and the difficulty of winning some claims might arise out of an especially culpable mental state or some other difficult-to-meet element. And it is true that the more difficult the substantive standard, the more difficult it generally will be to allege a valid claim. But it is worth remembering that there is *no* heightened pleading standard for § 1983 claims, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)), so plaintiffs need not allege facts with the particularity required of, say, fraud claims as required by Federal Rule of Civil Procedure 9(b).

Here, even without comparing himself to some other similarly situated group or individual, the amended complaint states a valid class-of-one claim based on the

7

alleged campaign to falsify evidence against Cameron. The officers allegedly took Cameron into custody because of an investigative alert that was itself based on no evidence (the substances having turned out not to be controlled substances). First. Am. Compl. ¶¶ 17, 25, 35. Officers Quinn and Kuksuk stopped Cameron despite having no probable cause based on the broken tail-light, *id.* ¶¶ 8, 13-14, searched the car illegally, and then falsified evidence against Cameron by lying about the gun being uncased and loaded, *id.* ¶¶ 20, 59-60. The officers then continued the targeting of Cameron by falsely charging him with the drug possession and the gun possession. *Id.* ¶¶ 42, 44, 53. This alleged persecution is similar enough to the "deliberate and unjustified official harassment"—a series of misconduct that cannot be explained by broad police discretion or a couple of mistakes—described in *Geinosky*, 675 F.3d at 745, to state a valid claim. *See also Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (if "animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual"); *Ivy v. Powers*, 2009 WL 230542, at *5-6 (N.D. Ill. Jan. 30, 2009); *Craft v. Flagg*, 2008 WL 1883337, at *3 (N.D. Ill. Apr. 24, 2008). Of course, as the facts are uncovered in discovery, it might be that the officers will be able to successfully move for summary judgment against this claim, whether on the merits directly or on qualified-immunity grounds.[6] But at the pleading stage, Cameron has done enough.

---

[6]The other litigation risk that Cameron runs by pursuing the class-of-one claim is that a jury might split its verdict and premise a liability finding (if there is one at all) on the class-of-one claim, which then could get overturned in light of the ongoing development of the case law on this issue. *See, e.g., Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)

8

Indeed, this claim would survive under either of the competing standards proposed by the plurality opinions in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 889, 913 (7th Cir. 2012) (en banc). In *Del Marcelle*, the plaintiff complained to police about gangs harassing him, but the police did not take action, and the plaintiff eventually had to sell his house. *Id.* at 888. He filed a class-of-one claim, alleging that the police arbitrarily provided him with less protection than other citizens of Brown County. *Id.* The district court dismissed the claim with prejudice, and the Seventh Circuit divided 4-1-5, which resulted in affirmance of the dismissal. Neither the plurality opinion authored by Judge Posner nor the plurality opinion offered by Chief Judge Wood proposed a standard that would prevent Cameron's claim from going forward. The illegal stop and search, as well as the falsification of evidence against Cameron, would be enough to allege that "he was the victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification, based on their public duties, for singling him out for unfavorable treatment—who acted in other words for personal reasons, with discriminatory intent and effect." *Del Marcelle*, 680 F.3d at 889 (Posner, J.). And the targeting of Cameron could be described as intentional discrimination that lacks a rational basis. *Id.* at 913 (Wood, C.J.). Either way, it does not matter that Cameron did not identify a specific similarly situated group or individual. The class-of-one claim remains intact.

---

(holding that class-of-one claims are not cognizable in the context of public employment, leaving the plaintiff with no successful federal claim because the jury had already rejected the other federal-law claims).

## B. Count 11: Illinois Civil Conspiracy

The amended complaint alleges, under Illinois law, a claim for civil conspiracy to commit malicious prosecution. First Am. Compl. ¶¶ 131-39. Cameron contends that all of the defendants agreed, either explicitly or implicitly, to maliciously prosecute Cameron, and the conspiracy included the overt acts of swearing-out false reports in furtherance of this conspiracy. *Id.* ¶¶ 133-136. The officers argue that the conspiracy claim should be dismissed because it is duplicative of the underlying substantive claim of malicious prosecution. Def. Officers' Mot. to Dismiss at 12.

The defense is half-right and half-wrong. Illinois law governs this state-law claim, and the Illinois Supreme Court deems civil conspiracy a distinct cause of action that serves as an additional theory of liability beyond the underlying tort itself. *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998). In *Dowd & Dowd*, the state supreme court outright held, "Illinois recognizes civil conspiracy as a distinct cause of action." *Id.* Co-conspirator liability extends beyond just the underlying substantive tort, so plaintiffs may plead and try to prove that form of liability as well. *Id.* Indeed, *Dowd & Dowd* in turn cited *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894-95 (Ill. 1994), which explained that "the function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts," *id.* at 894. This principle has been applied specifically to the tort of malicious prosecution. *See Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 844 (Ill. App. Ct. 2000)

10

(reversing dismissal of claim for conspiracy to commit tort of malicious prosecution). Based on this Illinois case law, including controlling Illinois Supreme Court case law, the officers here are wrong in arguing that the conspiracy claim must be dismissed. But the officers are half-right: Cameron will not be able to recover *twice* for the same injury, even if he proves both substantive and conspiratorial liability. *Dowd & Dowd*, 693 N.E.2d at 371-72. So, although the conspiracy claim survives the dismissal motion, at the very least the jury must be instructed (if the case gets to a jury trial) that there cannot be double recovery for the same injury.

It is worth noting that the defense cites a Seventh Circuit decision for the proposition that Illinois law does not permit a conspiracy claim. Def. Officers' Mot. to Dismiss at 12 (citing *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982)). The opinion in *Cenco* does indeed say that "there is no basis in common law thinking for a tort of conspiracy to commit a tort. If there is a conspiracy and it fails, there is no injury and hence no tort liability; if it succeeds, the damages are fully recoverable in an action on the underlying tort." *Id.* But this statement was not a holding: the defendants in that case did not argue there was no tort of civil conspiracy, so the opinion also says, "the fact that [the defendant] does not argue that there is no tort of conspiracy *makes us diffident* about disposing of it on this ground." *Id.* (emphasis added). Instead, the Seventh Circuit held that there could be no possible harm in dismissing the conspiracy claim because it was based on the same factual premise as a fraud claim that was not dismissed. *Id.* So *Cenco* did not issue a holding on whether Illinois law permits the pursuit of a civil conspiracy

claim. Also, *Cenco* predates *Dowd & Dowd*, which is a binding Illinois Supreme Court opinion. Other district-court decisions rely on *Dowd & Dowd*, rather than *Cenco*, as binding on this issue. *See Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1192 (N.D. Ill. 2013); *Saunders v. City of Chicago*, 2013 WL 6009933, at *11 (N.D. Ill. Nov. 13, 2013). In light of the controlling Illinois case law, Cameron's civil conspiracy claim survives.

## IV. Conclusion

For the reasons discussed above, the defendants' motions to dismiss are denied.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 9, 2017